# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

TYRONE JEROD COLE, JR.,
Plaintiff,

vs.

DAVID MCCROSKEY, *et al.*,
Defendants.

Case No. 1:18-cv-342

Barrett, J.
Litkovitz, M.J.

**ORDER AND REPORT
AND RECOMMENDATION**

Plaintiff, an inmate at the Southern Ohio Correctional Facility (SOCF), brings this civil rights action against defendants David McCroskey, Ronald Erdos, Bill Cool, Cynthia Davis, Larry Greene, Anita Trammel, Linnea Mahlman, Terry Tibbal, C/O Harper, and Lt. Borough. By separate Order, plaintiff has been granted leave to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915. This matter is before the Court for a *sua sponte* review of the complaint to determine whether the complaint, or any portion of it, should be dismissed because it is frivolous, malicious, fails to state a claim upon which relief may be granted or seeks monetary relief from a defendant who is immune from such relief. *See* Prison Litigation Reform Act of 1995 § 804, 28 U.S.C. § 1915(e)(2)(B); § 805, 28 U.S.C. § 1915A(b).

In enacting the original *in forma pauperis* statute, Congress recognized that a "litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits." *Denton v. Hernandez,* 504 U.S. 25, 31 (1992) (quoting *Neitzke v. Williams,* 490 U.S. 319, 324 (1989)). To prevent such abusive litigation, Congress has authorized federal courts to dismiss an *in forma pauperis* complaint if they are satisfied that the action is frivolous or malicious. *Id.*; *see also* 28 U.S.C. §§ 1915(e)(2)(B)(i) and 1915A(b)(1). A complaint may be dismissed as frivolous when the plaintiff cannot make any claim with a rational or arguable basis in fact or law. *Neitzke v.*

*Williams,* 490 U.S. 319, 328-29 (1989); *see also Lawler v. Marshall*, 898 F.2d 1196, 1198 (6th Cir. 1990). An action has no arguable legal basis when the defendant is immune from suit or when plaintiff claims a violation of a legal interest which clearly does not exist. *Neitzke,* 490 U.S. at 327. An action has no arguable factual basis when the allegations are delusional or rise to the level of the irrational or "wholly incredible." *Denton,* 504 U.S. at 32; *Lawler,* 898 F.2d at 1199. The Court need not accept as true factual allegations that are "fantastic or delusional" in reviewing a complaint for frivolousness. *Hill v. Lappin*, 630 F.3d 468, 471 (6th Cir. 2010) (quoting *Neitzke*, 490 U.S. at 328).

Congress also has authorized the *sua sponte* dismissal of complaints that fail to state a claim upon which relief may be granted. 28 U.S.C. §§ 1915 (e)(2)(B)(ii) and 1915A(b)(1). A complaint filed by a *pro se* plaintiff must be "liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble,* 429 U.S. 97, 106 (1976)). By the same token, however, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Hill*, 630 F.3d at 470-71 ("dismissal standard articulated in *Iqbal* and *Twombly* governs dismissals for failure to state a claim" under §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The Court must accept all well-pleaded factual allegations as true, but need not "accept as true a legal conclusion couched as a

factual allegation." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Although a complaint need not contain "detailed factual allegations," it must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 557. The complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson*, 551 U.S. at 93 (citations omitted).

In the complaint, plaintiff alleges that on April 18, 2011, he was involved in a group fight while at the Mansfield Correctional Institution (ManCI). (Doc. 1, Complaint at PageID 14). Plaintiff alleges that the incident resulted in a Rules Infraction Board (RIB) conviction and an increase in his security level to level 4B status. Plaintiff claims that he was assured by defendant Warden Terry Tibbal that a separation was in place for his safety from inmate Cannon, who was involved in the fight. According to plaintiff, Cannon was moved to another prison as a result of the incident.

Plaintiff claims that approximately three years later, on April 16, 2014, he was transferred to the Ohio State Penitentiary (OSP) and placed in a cell directly next to inmate Cannon. According to plaintiff, level 4B inmates are not allowed physical contact with each other, which prevented inmate Cannon from assaulting him. Nevertheless, plaintiff claims he repeatedly requested that the OSP Warden, defendant Anita Trammel, place a separation between him and Cannon. (*Id.* at PageID 16). Plaintiff claims that Trammel told him that a separation was not warranted because physical contact was not permitted between them on account of their security

3

status. In response to plaintiff's claim that the separation was necessary to prevent contact at future institutions, Trammel allegedly stated that "what happens in other institutions was not her problem." (*Id.*).

More than two years later, on September 26, 2016, plaintiff claims that he was again housed with Cannon at the SOCF. (*Id.* at PageID 17). On the same date, plaintiff claims Cannon attacked him and he was forced to protect himself. Plaintiff claims the incident resulted in his being found guilty of fighting by the RIB, despite defendant Sgt. McCroskey stating on the record that plaintiff fought in self-defense. According to plaintiff, McCroskey also stated that he would place a separation between plaintiff and Cannon, but the separation was never instituted.

On December 1, 2016, plaintiff claims that Case Manager Sidney Harris, denied his security level decrease solely based on the September 26, 2016 incident with Cannon.[1] (*Id.* at PageID 17–18). Plaintiff claims he "wrote it up" to defendant Institutional Inspector Linnea Mahlman, and unsuccessfully appealed the ruling to defendants Deputy Warden Larry Greene and Warden Erdos. (*Id.* at PageID 18). According to plaintiff, McCroskey's actions were not corrected. Plaintiff further alleges that on February 17, 2017, he was again placed in the same housing unit as Cannon. Plaintiff claims that he complained to a second shift officer, who told him there was nothing he could do and that plaintiff should "just get your get-back" and assault Cannon. (*Id.* at PageID 19). Plaintiff claims that he limited his recreation and library time to avoid Cannon and when Cannon noticed this he assaulted one of his close friends. Plaintiff indicates Cannon was transferred to an enhanced restrictive housing unit following the attack.

Next, on February 9, 2018, plaintiff alleges that defendant Lt. Borough sprayed him with

---

[1] Harris is not named as a defendant to this action. (*See* Doc. 1, Complaint at PageID 13).

4

the entire contents of a 24 ounce can of pepper spray after plaintiff refused to "cuff." (*Id.*). He claims the spray was deployed on his face and entire body. According to plaintiff, he collapsed and was unable to breathe or see. Plaintiff further claims that he was denied medical attention following the incident and was instead escorted to a restrictive housing unit, where he claims he remained covered in mace for over three days. (*Id.* at PageID 20). Plaintiff claims he wrote an informal complaint resolution to Mahlman and the warden's office. As a result of the incident, plaintiff claims he has mental health issues and skin irritation/burns. (*Id.* at PageID 20–21).

Plaintiff also complains about conditions of his confinement. Specifically, plaintiff claims he was left in a limited privilege housing unit for three days starting on August 18, 2016. (*Id.* at PageID 21). During this time, plaintiff claims he was forced to sleep on a bare mattress with no blanket. According to plaintiff, he complained to the third shift commander that he was freezing, but no one provided him with a blanket or otherwise responded to his complaints. Plaintiff further alleges that his family spoke with Case Manager Harris, but he did not get his property until August 21, 2016. Plaintiff claims that he filed an ICR to Institutional Inspector Mahlman, who responded by saying she does not handle property issues.

Plaintiff claims that on November 5, 2017 he was moved to the J3 housing unit. He again alleges that he did not receive bedding for four days and was subjected to temperatures as low as forty degrees at night. (*Id.* at PageID 22). Plaintiff claims that he complained to Sgt. Messer that he was cold and had not been able to sleep due to shivering. Messer allegedly told him that he would call and check on plaintiff's property. Plaintiff claims that he was subsequently moved to another housing unit, where there was no running water for nine days. According to plaintiff, he complained to shift correctional officers about the problem, but they

were unable to get the water turned on. Plaintiff further alleges that he wrote an ICR to Mahlman, but that she replied that she does not respond to ICRs per prison policy and directed plaintiff to Sgt. Chinn to address his property issues. Plaintiff claims that Chinn subsequently sent him back to Mahlman.[2] (*Id.* at PageID 23).

Plaintiff next raises claims of excessive isolation and a campaign of harassment. The complaint lists various instances in which plaintiff claims that he was placed in restrictive housing without a ticket or for longer than imposed by the RIB. (*See id.* at PageID 23–26). Plaintiff also complains about being placed in housing units with inmates of a higher security status. (*Id.* at PageID 24).

Finally, plaintiff alleges that defendant officer Harper retaliated against him. On January 27, 2018, plaintiff claims Harper stopped him and told him to "hit the wall." (*Id.* at PageID 26). Plaintiff indicates that he subsequently punched the wall, as he claims he was instructed. (*Id.* at PageID 27). According to plaintiff, Harper ordered him to remove his shoes and "once C/O Harper was satisfied he then warned me about writing up C/Os for harassment and told me this is what will happen to me." (*Id.*). Plaintiff further alleges that he was subsequently denied recreation by Harper on one occasion.

For relief, plaintiff seeks an injunction and monetary damages. (*Id.* at PageID 15).

At this stage in the proceedings, without the benefit of briefing by the parties to this action, the undersigned concludes that plaintiff may proceed with his Eighth Amendment claim against defendant Borough, based on his allegations that Borough used excessive force against him on February 9, 2018. However, plaintiff's remaining claims should be dismissed. *See* 28

---

[2] Sgt. Messer, Sgt. Chinn, and the shift officers are not named as defendants to this action. (*See* Doc. 1, Complaint at PageID 13).

U.S.C. §§ 1915(e)(2)(B) & 1915A(b).

First, to the extent that plaintiff seeks to hold the warden and deputy warden defendants liable for their failure to correct the various allegations contained the complaint, it is well-settled that the doctrine of *respondeat superior* does not apply in § 1983 lawsuits to impute liability onto supervisory personnel. *See, e.g., Wingo v. Tennessee Dep't of Corr.*, 499 F. App'x 453, 455 (6th Cir. 2012) (per curiam) (citing *Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981)). "In order to find supervisory personnel liable, a plaintiff must allege that the supervisors were somehow personally involved in the unconstitutional activity of a subordinate, . . . or at least acquiesced in the alleged unconstitutional activity of a subordinate." *Id.* (citing *Dunn v. Tennessee*, 697 F.2d 121, 128 (6th Cir. 1982), and *Bellamy v. Bradley,* 729 F.2d 416, 421 (6th Cir. 1984)); *see also Colvin v. Caruso,* 605 F.3d 282, 292 (6th Cir. 2010) (quoting *Cardinal v. Metrish*, 564 F.3d 794, 803 (6th Cir. 2009)) (to succeed on claim against supervisory state prison officials, the plaintiff must show the officials "at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending officers"). Plaintiff has not alleged any facts even remotely suggesting that defendants Tibbal, Erdos, Cool, Trammel, or Greene directly participated in the alleged violations of plaintiff's constitutional rights. The mere fact that these defendants hold supervisory positions is not enough to impose liability on them under section 1983.

Plaintiff's failure to protect claims against defendants should also be dismissed. Plaintiff alleges that ManCI Warden Tibbal assured him that a separation was in place for his safety from inmate Cannon following the April 18, 2011 fight and that OSP Warden Trammel told him a separation was not necessary while at OSP because physical contact was not permitted between

7

plaintiff and Cannon on account of their security classifications. Plaintiff further alleges that McCroskey failed to institute a separation following the September 26, 2016 fight at SOCF. (*See* Doc.1, Complaint at PageID 14–19).

In order to state an Eighth Amendment claim against prison officials based on their failure to protect him from an attack, plaintiff must allege facts showing that defendants' conduct amounted to "deliberate indifference" to a known risk of harm to plaintiff. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994); *see also Vaughn v. Ricketts*, 859 F.2d 736, 741 (9th Cir. 1988) (finding that a prison administrator's indifference to brutal behavior of guards towards inmates is sufficient to state an Eight Amendment claim), *overruled on other grounds by Koch v. Ricketts*, 68 F.3d 1191 (9th Cir. 1995). A prison official may be held liable for his failure to protect inmates from attacks only if he knows that an inmate faces "a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847.

The Sixth Circuit has held that an Eighth Amendment claim for monetary damages resulting from deliberate indifference requires an inmate to plead and prove that he suffered some non-*de minimis* physical injury. *Wilson v. Yaklich*, 148 F.3d 596, 600–601 (6th Cir. 1998) (finding that a complaint failed to state an Eighth Amendment claim where "plaintiff primarily request[ed] monetary relief . . . in the form of compensatory and punitive damages" but the complaint contained no allegations that inmates who threatened the plaintiff "actually injured him physically"). *See also Dugas v. Wittrup*, Case No. 2:15-cv-67, 2016 WL 4536221, at *4 (S.D. Ohio Aug 31, 2016) ("actual harm or injury is an essential element of an Eighth Amendment claim for monetary damages resulting from deliberate indifference") (Report and

Recommendation), *adopted*, 2016 WL 6122752 (S.D. Ohio Oct. 19, 2016); *Stone v. Todd Cty. Detention Center*, Case No. 1:11-cv-P123-M, 2012 WL 1202037, at *5–6 (W.D. Ky. Apr. 10, 2012) (dismissing an Eighth Amendment claim for damages based on allegations of past acts resulting in no physical injury); *Wells v. Jefferson Cty. Sheriff Dep't*, 159 F. Supp. 2d 1002, 1010–11 (S.D. Ohio 2001) (finding that a failure-to-protect claim failed because the plaintiff did not plead that he suffered any physical injury); *Bristow v. Eleby*, Case No. 2:08-cv-0250, 2008 WL 3414132, at *3 (S.D. Ohio Aug. 8, 2008) (finding that the plaintiff failed to state an Eighth Amendment claim for damages where he failed to allege that he suffered an actual assault as a result of the defendant's failure to protect him).

In this case, plaintiff has failed to allege any physical harm from the April 18, 2011 or September 26, 2016 incidents. Plaintiff's sole allegation regarding physical injury is his conclusory allegation that he was punished following the September 26, 2016 fight "with segtime, physical injury and held in . . . level 4 security." (*See* Doc. 1, Complaint at PageID 18). In any event, plaintiff fails to allege any facts suggesting that he faced a substantial risk of serious harm at either ManCI or OSP, or that defendants Tibbal and Trammel were deliberately indifferent to his safety.[3] Plaintiff alleges that inmate Cannon was transferred from ManCI following the initial fight at ManCI and does not allege any facts to plausibly suggest he faced a substantial risk of serious harm at OSP, three years after the incident. As alleged by plaintiff, physical contact was already prohibited between plaintiff and Cannon at OSP on account of their

---

[3] It also appears that plaintiff's claims stemming from ManCI and OSP are subject to dismissal on statute of limitations grounds. The complaint is governed by Ohio's two-year statute of limitations applicable to personal injury claims. *See, e.g., Browning v. Pendleton*, 869 F.2d 989, 992 (6th Cir. 1989) (holding that the "appropriate statute of limitations for 42 U.S.C. § 1983 civil rights actions arising in Ohio is contained in Ohio Rev. Code § 2305.10, which requires that actions for bodily injury be filed within two years after their accrual"). In the complaint, plaintiff complains that separations were not instituted in 2011 and 2014 while plaintiff was located at ManCI and OSP, however plaintiff did not file the instant action until May 18, 2018.

security classifications. To the extent that plaintiff seeks to hold Tibbal or Trammel liable based on the September 26, 2016 fight with Cannon at SOCF several years later, plaintiff has not alleged any facts plausibly suggesting that these defendants were aware that plaintiff faced a substantial risk of serious harm at SOCF or were deliberately indifferent to his safety.

Plaintiff has also failed to state a claim upon which relief may be granted in connection with the September 26, 2016 fight against the SOCF defendants. Plaintiff has not alleged that defendants Erdos, Cool, or McCroskey were aware that plaintiff faced a substantial risk of serious harm prior to the September 26, 2016 fight. The complaint similarly contains no factual allegations suggesting that defendant SOCF Warden Erdos or Deputy Warden Cool were aware of his issues with Cannon or were otherwise deliberately indifferent to his safety following the incident. Plaintiff does allege that McCroskey failed to institute a separation following the 2016 fight. However, as noted above, plaintiff does not allege he suffered any physical harm from a subsequent attack to maintain a claim for money damages. To the extent that plaintiff seeks an injunction,[4] the complaint fails to allege any facts to suggest that plaintiff currently faces a substantial risk of serious harm. Plaintiff alleges that Cannon was transferred to an enhanced restrictive housing unit after assaulting plaintiff's friend (*see* Doc. 1, Complaint at PageID 19), and the complaint is devoid of any subsequent factual allegations regarding Cannon. Therefore, plaintiff's failure to protect claims should be dismissed.

Plaintiff fails to state a viable constitutional claim under the Fourteenth Amendment in connection with the RIB hearings, because the challenged disciplinary actions did not amount to a deprivation of a constitutionally protected liberty interest. In *Sandin v. Conner*, 515 U.S.

---

[4] Without any elaboration, plaintiff requests "an injunction" in the relief portion of the complaint. (Doc.1, Complaint at PageID 15).

472 (1995), the Supreme Court held that the Fourteenth Amendment confers on prisoners only a "limited" liberty interest "to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," or which "will inevitably affect the duration of his sentence." *Sandin*, 515 U.S. at 484, 487; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Williams v. Wilkinson,* 51 F. App'x 553, 556 (6th Cir. 2002). The Sixth Circuit has held that confinement in segregation generally does not rise to the level of an "atypical and significant" hardship implicating a liberty interest except in "extreme circumstances, such as when the prisoner's complaint alleged that he is subject to an *indefinite* administrative segregation" or that such confinement was excessively long in duration. *Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010) (citing *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008)) (emphasis in original); *see also Harris v. Caruso,* 465 F. App'x 481, 484 (6th Cir. 2012) (holding that the prisoner's 8-year confinement in segregation was of "atypical duration" and thus "created a liberty interest that triggered his right to due process). *Cf. Wilkinson v. Austin*, 545 U.S. 209, 223-24 (2005) (ruling that an inmate's transfer to Ohio's "supermax" prison "imposes an atypical and significant hardship" given the combination of extreme isolation of inmates, prohibition of almost all human contact, indefinite duration of assignment, and disqualification for parole consideration of otherwise eligible inmates).

Here, plaintiff has not alleged that the challenged disciplinary proceedings resulted in the lengthening of his prison sentence, the withdrawal of good-time credits, or the deprivation of any necessities of life. Moreover, plaintiff has not alleged any facts to suggest that he was subjected to a lengthy disciplinary placement amounting to an atypical or significant hardship that would

trigger constitutional concerns. Accordingly, because plaintiff does not have a protected liberty interest under the circumstances alleged herein, any claim against defendants for their conduct in the disciplinary proceedings fails to state a cognizable federal claim under the Fourteenth Amendment's Due Process Clause.

In addition, to the extent that plaintiff disputes defendants' decisions regarding his security classification or cell transfers/placement at SOCF, he has not stated a viable claim because he has no constitutional right to be placed in a particular prison or to be held in a specific security classification. *See, e.g., Harbin-Bey v. Rutter*, 420 F.3d 571, 577 (2005); *Johnson v. Mohr*, No. 2:15cv86, 2015 WL 1526804, at *2 (S.D. Ohio Apr. 3, 2015) (Graham, J.); *Lawson v. Haddon*, No. 1:09cv551, 2009 WL 2242692, at *4 (W.D. Mich. July 16, 2009) (and cases cited therein); *see also McKune v. Lile,* 536 U.S. 24, 39 (2002) (citing *Meachum v. Fano,* 427 U.S. 215, 225 (1976)) ("It is well settled that the decision where to house inmates is at the core of prison administrators' expertise."); *Jimenez v. United States,* No. 2:07cv819, 2007 WL 3232469, at *1, *3 (S.D. Ohio Nov. 1, 2007) (and cases cited and quoted therein) (inmates do not "have any constitutionally protected interest in a particular housing assignment or transfer to a particular prison").

Plaintiff's allegations that defendants failed to respond to his kites and/or grievances or failed to conduct investigations of his complaints are also subject to dismissal at the screening stage. "There is no statutory or common law right, much less a constitutional right, to an investigation." *Mitchell v. McNeil*, 487 F.3d 374, 378 (6th Cir. 2007); *see also Daniels v. Lisath*, No. 2:10-cv-968, 2011 WL 2710786, at *2 (S.D. Ohio July 13, 2011). Furthermore, to the extent that plaintiff claims that the grievance procedure failed to produce the correct outcome, this

12

cannot give rise to a § 1983 claim because "[p]rison inmates do not have a constitutionally protected right to a grievance procedure." *Miller v. Haines*, No. 97–3416, 1998 WL 476247, at *1 (6th Cir. Aug. 03, 1998) (citations omitted). Prison officials whose only roles "involve their denial of administrative grievances and their failure to remedy the alleged [unconstitutional] behavior" cannot be liable under § 1983. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). Nor does a prison official's alleged failure to adequately investigate claims of misconduct rise to the level of "encouragement" that would make the official liable for such misconduct. *Knop v. Johnson,* 977 F.2d 996, 1014 (6th Cir. 1992); *Bellamy v. Bradley,* 729 F.2d 416, 421 (6th Cir. 1984).

Plaintiff's allegations regarding the prison conditions at SOCF should also be dismissed. Although plaintiff alleges that he was subjected to extreme cold temperatures and was deprived of a blanket and/or water for several days, plaintiff has not included any factual allegations of wrongdoing on the part of any of the named defendants with respect to the alleged conditions. Plaintiff does allege that he filed an ICR with defendant Mahlman and brought the issues to the attention of Sgt. Messer and other shift officers. However, Messer nor the shift officers have been named as defendants to this action and, as stated above, prison officials like defendant Mahlman whose only roles "involve their denial of administrative grievances and their failure to remedy the alleged [unconstitutional] behavior'" cannot be liable under § 1983. *Shehee*, 199 F.3d at 300. Therefore, these claims should be dismissed.

Amongst his allegations regarding the prison conditions at SOCF, plaintiff also includes allegations that he was not provided with his property. To the extent plaintiff alleges he was deprived of his property without due process of law, his allegations are insufficient to state an

13

actionable § 1983 claim. In order to assert such a claim, plaintiff must first "plead . . . that state remedies for redressing the wrong are inadequate." *Vicory v. Walton*, 721 F.2d 1062, 1066 (6th Cir. 1983). *See also Hudson v. Palmer*, 468 U.S. 517 (1984); *Parratt*, 451 U.S. 527 (1981). "If satisfactory state procedures are provided in a procedural due process case, then no constitutional deprivation has occurred despite the injury." *Jefferson v. Jefferson County Pub. Sch. Sys.*, 360 F.3d 583, 587-88 (6th Cir. 2004). Accordingly, in order to state a procedural due process claim under section 1983 "the plaintiff must attack the state's corrective procedure as well as the substantive wrong." *Meyers v. City of Cincinnati*, 934 F.2d 726, 731 (6th Cir. 1991) (quoting *Vicory*, 721 F.2d at 1066). A plaintiff "may not seek relief under Section 1983 without first pleading and proving the inadequacy of state or administrative processes and remedies to redress [his] due process violations." *Jefferson*, 360 F.3d at 588.

Plaintiff has not alleged any facts even remotely indicating that his remedies under Ohio law to redress the wrong of which he complains are inadequate. Plaintiff's complaint fails to explain why a state tort remedy for conversion would not suffice to address his claim. *See Fox v. Van Oosterum*, 176 F.3d 342, 349 (6th Cir. 1999). Therefore, he fails to state a due process claim that is actionable in this § 1983 proceeding.

Finally, plaintiff's retaliation claims against defendant Harper should be dismissed. A prisoner's claim of retaliation for engaging in protected conduct is grounded in the First Amendment. *Jones v. Caruso*, 421 F. App'x 550, 553 (6th Cir. 2011) (citing *Thaddeus-X v. Blatter*, 175 F.3d 378, 388 (6th Cir. 1999) (en banc)). A retaliation claim has three elements: (1) the prisoner engaged in protected conduct; (2) an adverse action was taken against the prisoner that "'would deter a [prisoner] of ordinary firmness from continuing to engage in that

conduct'"; and (3) the prisoner's protected conduct, at least in part, motivated the adverse action. *Id.* (quoting *Thomas v. Eby*, 481 F.3d 434, 440 (6th Cir. 2007), in turn quoting *Thaddeus-X*, 175 F.3d at 394). As noted above, in this case, plaintiff claims that Harper retaliated against him for filing grievances against other officers. However, plaintiff's allegation that Harper forced him to remove his shoes and denied him recreation on one occasion is insufficient to deter a person of ordinary firmness from continuing to engage in the protected conduct. Therefore, plaintiff's allegations do not rise to the level of a constitutional violation and his retaliation claim against Harper should be dismissed.

Accordingly, in sum, plaintiff may proceed with his excessive force claim against defendant Borough. *See* 28 U.S.C. §§ 1915(e)(2)(B) & 1915A(b). Having found that the remaining allegations in the complaint fail to state a claim upon which relief may be granted, plaintiff's remaining claims should be dismissed.

**IT IS THEREFORE RECOMMENDED THAT:**

The complaint be **DISMISSED with prejudice** pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1), with the exception of plaintiff's excessive force claim against defendant Borough.

**IT IS THEREFORE ORDERED THAT:**

1. The United States Marshal shall serve a copy of the complaint, summons, the Order granting plaintiff *in forma pauperis* status, and this Order and Report and Recommendation upon defendant Borough as directed by plaintiff, with costs of service to be advanced by the United States.

2. Plaintiff shall serve upon defendant or, if appearance has been entered by counsel,

upon defendant's attorney, a copy of every further pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed with the Clerk of Court a certificate stating the date a true and correct copy of any document was mailed to defendant or defendant's counsel. Any paper received by a district judge or magistrate judge which has not been filed with the Clerk or which fails to include a certificate of service will be disregarded by the Court.

3. Plaintiff shall inform the Court promptly of any changes in his address which may occur during the pendency of this lawsuit.

Date: 6/18/18

Karen L. Litkovitz
United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

TYRONE JEROD COLE, JR.,
Plaintiff,

vs.

DAVID MCCROSKEY, *et al.*,
Defendants.

Case No. 1:18-cv-342

Barrett, J.
Litkovitz, M.J.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** after being served with a copy thereof. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).